984 P.2d 703

STATE of Idaho, Plaintiff–Respondent,

v.

Eric Anthony BRAUCH, Defendant–Appellant.

No. 24122.

Supreme Court of Idaho,
Coeur d'Alene, April 1999 Term.

July 22, 1999.

Rehearing Denied Sept. 16, 1999.

Rude, Jackson & Daugharty, Coeur d'Alene, for appellant. Dan J. Rude argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

KIDWELL, Justice.

Defendant Eric Brauch appeals from the district court's denial of a motion to suppress evidence resulting from a police search of his rental house where the landlord gave police permission to search after Brauch apparently abandoned the premises. We affirm.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Eric Anthony Brauch and Catherine Gnecchi (tenants) rented a house in Coeur d'Alene from Paula Victoria Johnson. Johnson rented the house (the Johnson house) through Anchor Property Management (Anchor). Johnson's management agreement with Anchor provided a mutual thirty-day cancellation clause. In July 1996, the tenants signed a one-year rental agreement with Anchor and paid a $400 security deposit. The rental agreement specified that if the tenants vacated or abandoned the premises, Johnson or Anchor could dispose of any property left on the premises. Although rent was due on the first day of the month, the tenants paid the rent on the fifth.

On January 7, 1997, Johnson informed Karen DeHoog, Anchor's property manager, that she intended to sell the house. She told DeHoog that the tenants could either move before the lease was up, or stay and agree to have the house shown to potential buyers. DeHoog left a message on the tenants' answering machine conveying this information.

The tenants found another house to rent on Gilbert Street in Coeur d'Alene. They did not give Anchor one month's written notice as required by the lease. They moved into the Gilbert Street house the first week of February, moving most of their belongings over the weekend of February 8 and 9.

By February 10, the Johnson house was vacant, although several items were left inside the garage. Brauch said the items consisted of painting tools, gardening tools, fiberglass canisters for a water purification system, a fish tank stand, and $150 worth of lacquer, thinner, and latex paints. Johnson characterized these items as trash, leftover paint cans, ammunition, and a face mask. In addition, a dog house and lawn mower remained outside. The tenants did not return the keys to either Anchor or Johnson, and they testified that they intended to return to the house to retrieve the rest of their belongings and make repairs. The utilities remained in the tenants' names through February. However, the tenants did not pay the February rent.

On February 9, DeHoog told Johnson that the tenants had moved out of the house. On February 10, DeHoog and Johnson inspected the vacant house. While in the basement, Johnson noticed that the wiring had been changed, black plastic covered the walls, and dirt covered part of the floor. She returned to clean the house the following day. Johnson testified that after she discovered a receipt for halogen bulbs she suspected that marijuana had been grown in the basement. She went to the police station and informed Detectives Hildebrandt and Moyer of her observations. Johnson told them that she owned the rental house which had been vacated by the tenants. She stated that she was selling the property, that Anchor had managed the rental, that she had taken the property over from Anchor, and that she and DeHoog had inspected the house the previous day. She requested that the detectives inspect the house with her.

The detectives accompanied Johnson to the house. At the suppression hearing, Hildebrandt testified that the house appeared vacant to them. Hildebrandt said that before entering the house, he saw some objects outside the garage that to him looked like "abandoned junk." Hildebrandt testified that he believed Johnson had authority to consent to a search of the house. The detectives, accompanied by Johnson, inspected the house and the items remaining in the garage. In the basement they found dried and green marijuana clippings, black plastic sheeting, and numerous electrical outlets consistent with lighting used for growing marijuana.

After searching the Johnson house, the detectives obtained a copy of the lease from Anchor. DeHoog also informed them where Gnecchi worked. When the detectives contacted Gnecchi, she told them that she and

Brauch had moved to the Gilbert Street house where there was possibly one marijuana plant. Based on this information, the detectives obtained a search warrant for the Gilbert Street house, where they found seven marijuana plants, loose marijuana, and paraphernalia.

Brauch was arrested for manufacturing a controlled substance in violation of I.C. § 37–2732(a)(1)(B). He filed a motion to suppress the evidence seized pursuant to the search warrant as the product of an unlawful search of the Johnson house. After a hearing, the district court found that "[a]s of February 11, 1997, the Johnson–Brauch and Gnecchi rental agreement had not been terminated." The district court concluded that "Johnson did not have the actual authority to consent to the search of the Johnson house by Moyer and Hildebrandt" but that "Moyer and Hildebrandt reasonably believed that Johnson could consent to the search of the Johnson house." Holding that the Johnson house search came under the apparent authority exception to the warrant requirement, the district court denied the motion to suppress.

Brauch entered a conditional guilty plea pursuant to Idaho Criminal Rule 11(a)(2) on June 19, 1997, reserving his right to appeal the denial of the motion to suppress. The district court suspended execution of Brauch's two-year sentence and placed Brauch on three years' probation. The district court stayed execution of most terms of the judgment pending appeal.

## II.

## STANDARD OF REVIEW

When reviewing an order denying a motion to suppress evidence, this Court overturns a trial court's factual findings only if they are clearly erroneous. *Doe v. State,* 131 Idaho 851, 853, 965 P.2d 816, 818 (1998). In addition, this Court gives due deference to any implicit findings of the trial court supported by substantial evidence. *State v. DuValt,* 131 Idaho 550, 553, 961 P.2d 641, 644 (1998). The credibility and weight to be given evidence is in the province of the trial court. *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.,* 118 Idaho 116,

118, 794 P.2d 1389, 1391 (1990). However, this Court exercises free review over questions of law, including whether "constitutional requirements have been satisfied in light of facts found." *State v. Harvill,* 131 Idaho 720, 721, 963 P.2d 1157, 1158 (1998) (quoting *State v. Weber,* 116 Idaho 449, 452, 776 P.2d 458, 461 (1989)).

## III.

## ANALYSIS

### A. A Landlord Has Apparent Authority to Consent to a Search of Rented Premises Where the Tenants' Lease Has Not Actually Ended but a Reasonable Person Could Conclude that the Tenants Had Abandoned the Premises.

The district court concluded that the warrantless search of the Johnson house did not violate Brauch's rights against unreasonable searches and seizures because it came under the apparent authority exception to the warrant requirement. Brauch contends that, as a matter of law, landlords cannot have apparent authority over their tenants' premises.

Individuals have a reasonable expectation of privacy within their homes which is protected by the Fourth Amendment. *Oliver v. United States,* 466 U.S. 170, 177–78, 104 S.Ct. 1735, 1740–41, 80 L.Ed.2d 214, 223–24 (1984); *State v. Vasquez,* 129 Idaho 129, 131, 922 P.2d 426, 428 (Ct.App.1996). Warrantless searches and seizures inside an individual's home are presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 650–51 (1980); *State v. Curl,* 125 Idaho 224, 225, 869 P.2d 224, 225 (1993). Warrants are not required, however, if a search falls under "a few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967)); *see also State v. Ham,* 113 Idaho 405, 406, 744 P.2d 133, 134 (Ct.App.1987). The burden is on the government to show that a situation falls within one of the exceptions to the war-

rant requirement. *Coolidge*, 403 U.S. at 455, 91 S.Ct. at 2032, 29 L.Ed.2d at 576; *see also State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986). If the government fails to meet its burden, the evidence obtained as a result of the illegal search, including later-discovered evidence derived from the original illegal search, is inadmissible in court. *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599, 608 (1984); *State v. Bainbridge*, 117 Idaho 245, 249, 787 P.2d 231, 235 (1990).

■ A warrant is not required when police obtain consent for the search from a person who has actual authority to consent. *United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249 (1974); *Johnson*, 110 Idaho at 522, 716 P.2d at 1294; *Ham*, 113 Idaho at 406, 744 P.2d at 134. Actual authority can result from common authority over the premises, resulting from "mutual use of the property by persons generally having joint access or control for most purposes," as in the case of married couples or joint tenants. *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 249–50 n. 7; *see also State v. Huskey*, 106 Idaho 91, 93, 675 P.2d 351, 353 (Ct.App.1984).

■ If a person consenting to a search does not have actual authority, but government agents reasonably believe that the person has authority, a warrantless search is valid. *Illinois v. Rodriguez*, 497 U.S. 177, 188–89, 110 S.Ct. 2793, 2801–02, 111 L.Ed.2d 148, 161–62 (1990); *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). The police's belief that the person giving consent has authority to do so must be objectively reasonable. *Rodriguez*, 497 U.S. at 188–89, 110 S.Ct. at 2801–02, 111 L.Ed.2d at 161–62.

■ Like the protection afforded to all U.S. citizens by the Fourth Amendment, Article I, Section 17 of the Idaho Constitution protects Idaho citizens from unreasonable searches and seizures. As a matter of state constitutional law, evidence which results from illegal searches and seizures is inadmissible in state courts. *Johnson*, 110 Idaho at 525, 716 P.2d at 1297; *State v. Conner*, 59 Idaho 695, 703, 89 P.2d 197, 201 (1939).

Stating that "the Fourth Amendment principles of *Rodriguez* apply equally to art. 1, § 17 of the Idaho Constitution," this Court has held that a search warrant is not required when police reasonably believe that a person consenting to the search has authority to consent. *State v. McCaughey*, 127 Idaho 669, 674, 904 P.2d 939, 944 (1995).

■ A landlord does not have actual authority to consent to a search of a tenant's home when the tenant is in actual possession. *Chapman v. United States*, 365 U.S. 610, 616–17, 81 S.Ct. 776, 779–80, 5 L.Ed.2d 828, 833–34 (1961); *Johnson*, 110 Idaho at 523, 716 P.2d at 1295 (applying identical analysis under federal and Idaho constitutions). *See also Stoner v. California*, 376 U.S. 483, 489, 84 S.Ct. 889, 893, 11 L.Ed.2d 856, 860–61 (1964) (hotel clerk could not consent to search of guest's room); *Lustig v. United States*, 338 U.S. 74, 76, 78, 69 S.Ct. 1372, 1373, 1374, 93 L.Ed. 1819, 1822, 1823 (1949) (hotel manager could not consent to search of guest's room). However, if a tenant has abandoned the premises so that the landlord has exclusive right to possession of the property, the landlord may validly consent to a search. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698–99, 4 L.Ed.2d 668, 687–88 (1960).

The district court found that, as of the date of the search, the tenants' rental agreement had not been terminated. The determination of whether a rental period has expired is a factual issue. *Johnson*, 110 Idaho at 523, 716 P.2d at 1295. Because Brauch was in possession, Johnson had no actual authority to consent to the search. *Id.*; *Chapman*, 365 U.S. at 616–17, 81 S.Ct. at 779–80, 5 L.Ed.2d at 833–34. However, the district court concluded that Johnson had apparent authority to consent to a search.

Brauch contends that the apparent authority exception to the warrant requirement can not apply to landlords because they almost never have common authority over leased premises with their tenants. He points out that the only apparent authority cases controlling on this Court involved apparent common authority. *See Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797–98, 111 L.Ed.2d at

156–57; *McCaughey*, 127 Idaho at 670–71, 904 P.2d at 940–41.

■ We see no reason to limit the apparent authority exception so rigidly. The key to the apparent authority exception to the warrant requirement is the concept of reasonableness. *See Rodriguez*, 497 U.S. at 183–88, 110 S.Ct. at 2798–2801, 111 L.Ed.2d at 157–61; *McCaughey*, 127 Idaho at 672, 674, 904 P.2d at 942, 944. Under the Fourth Amendment, a person is assured "not that no government search of his house will occur unless he consents; but that no such search will occur that is unreasonable." *Rodriguez*, 497 U.S. at 183, 110 S.Ct. at 2799, 111 L.Ed.2d at 158 (internal quotations omitted). Likewise, under the Idaho Constitution, the focus of inquiry is on whether police conduct is objectively reasonable. *McCaughey*, 127 Idaho at 674, 904 P.2d at 944. As an Illinois court stated, "We see no principled distinction between a *reasonable but erroneous* belief by the police that a third party had common authority with the defendant over the premises in question, and a *reasonable but erroneous* belief by the police that a defendant had abandoned the premises in question." *People v. Smith*, 203 Ill.App.3d 545, 148 Ill.Dec. 946, 561 N.E.2d 252, 260 (1990) (internal quotations omitted).

Our holding is consistent with Idaho's existing case law. In *State v. Johnson*, this Court held that a landlord did not have authority to consent to the search of a tenant's apartment where there was evidence that the tenant still resided there, even though the tenant was behind in his rent. *Johnson*, 110 Idaho at 523, 716 P.2d at 1295. The fact that there was no evidence of abandonment was critical to the Court's holding:

> There simply is no evidence in this case from which Johnson's landlord could have concluded that Johnson had *abandoned* his apartment. *On the contrary, the record reveals that numerous personal effects were found in Johnson's home, suggesting, that, far from abandoning his home, he was still living there.*

*Id.* at 521, 716 P.2d at 1293. Recently, the Court of Appeals found that the owner of a motor home had apparent authority to consent to a police search of a motor home in which the defendant lived after the defendant had packed his personal belongings and left town. *Hawkins*, 131 Idaho at 401, 958 P.2d at 27; I.C. § 19–2719.

Other jurisdictions that have considered this issue have come to a similar conclusion. *See, e.g., United States v. Sledge*, 650 F.2d 1075, 1075–76. 1080–81 (9th Cir.1981) (holding that search was valid where the police relied in good faith on a landlord's authority to consent to the search of apparently abandoned premises where furniture and food were removed, tenants had indicated that they might move out before end of rental period, and tenants did not respond to phone calls or notes on the door, even though trash, chemicals, and a few items of clothing remained in the apartment); *United States v. Hoey*, 983 F.2d 890, 891–93 (8th Cir.1993) (upholding warrantless search authorized by landlord even though some personal effects remained in the apartment where tenant was six weeks behind in rent, tenant had held a moving sale, and tenant's neighbor informed landlord that tenant had moved out); *State v. Roberts*, 160 Vt. 385, 631 A.2d 835, 839 (1993) (where phone was disconnected, electricity was shut off, rent was two months in arrears, and rental agent believed that tenant had skipped out, landlord had apparent authority to consent to search even though personal property remained in house); *Smith*, 148 Ill.Dec. 946, 561 N.E.2d at 255, 259–60 (as an alternative holding, upholding under *Rodriguez* the search of a rented house by the landlord's consent where tenant had not paid rent for five weeks, power was turned off, food was rotting inside, most furniture was removed, and residence was in disarray, even though tenant had installed a new padlock on the door).

■ In this case we hold that a landlord has apparent authority to consent to a search where the totality of circumstances indicates to a reasonable person that the tenant has in fact abandoned the premises. Indicators of abandonment may include nonpayment of rent, removal of furniture, clothes, foodstuffs, and personal items, nonpayment or disconnection of utilities, statements to landlords or neighbors, and any other acts inconsistent with a tenant's control

or occupation of the leased premises. Mere nonpayment of rent does not give a landlord apparent authority to consent to a search of tenants' premises. *See Johnson,* 110 Idaho at 523–24, 716 P.2d at 1295–96. A landlord does not have apparent authority merely because the landlord has legitimate access to the premises for limited purposes. *See, e.g., State v. Rose,* 75 Wash.App. 28, 876 P.2d 925, 927, 929 (1994), *rev'd on other grounds,* 128 Wash.2d 388, 909 P.2d 280 (1996) (holding that landlord did not have apparent authority to consent to search of property where landlord had performed routine yard maintenance and used part of the garage for storage); *United States v. Brown,* 961 F.2d 1039, 1040–41 (2d Cir.1992) (holding that police could not reasonably rely on a landlord's authority to authorize their entrance when tenant resided on premises and landlord had a limited right of entry).

### B. Police Reasonably Relied Upon the Landlord's Consent Under the Facts of This Case.

Brauch contends that the detectives' reliance upon Johnson's apparent authority was not reasonable under the facts of this case. Because the detectives knew that Anchor managed the property, he contends, they were obligated to conduct a reasonable investigation. An investigation would have revealed that the lease did not expire for several months, that the tenants had not returned their keys, and that Anchor held the tenants' $400 damage deposit and the tenants had not yet requested an inspection for return of their deposit.

Police have a duty of reasonable investigation before they may rely upon the authority of a third party to consent to a search:

As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? ... If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Rodriguez,* 497 U.S. at 188–89, 110 S.Ct. at 2801–02, 111 L.Ed.2d at 161–62 (internal quotations omitted).

As found by the district court, the detectives knew the following facts at the time that they searched the Johnson house:

Johnson told Moyer and Hildebrandt that she was the owner of the Johnson house; that the renters had moved out; that there was no furniture or goods in the house; that she was cleaning the house in order to either sell or re-let the house; that while cleaning she had found some suspicious items; and that she wanted the officers to look at the house.

Johnson had a key and unlocked the house and garage when Moyer and Hildebrandt went to inspect the Johnson house.

When Moyer and Hildebrandt went into the Johnson house, it was empty: there was no furniture, furnishings, clothes, food stuffs or personal effects.

A reasonable person in the detectives' position could conclude that the tenants had abandoned the premises. Johnson told the detectives many facts before they entered the house that indicated that possession of the premises had reverted to her. When the detectives entered the house, nothing they saw contradicted Johnson's assertions. The house was empty with no indications that anyone lived there. Even if the detectives had known that the tenants retained the keys and had not taken steps to retrieve their security deposit, the detectives could have reasonably concluded that the tenants had abandoned the premises. *Compare Sledge,* 650 F.2d at 1076, 1078 (holding that "the requisite conditions for abandonment were apparent in the situation" where furniture and food were gone from the apartment but a few clothes, some half-empty liquor bottles, and a cardboard box containing chemicals remained) *with Morse v. State,* 604 So.2d 496, 499, 503 (Fla.Dist.Ct.App. 1992) (holding that police could not have reasonably believed that motel owner had authority to consent to search where motel owner in middle of night purported to evict tenant of 1½ months on 30 minutes notice).

We affirm the district court's conclusion that the detectives reasonably believed that Johnson had authority to consent to the search. The search of the Johnson house was reasonable under both the Fourth Amendment and Article I, Section 17 of the Idaho Constitution.

## IV.

### CONCLUSION

A warrantless search of a tenant's premises does not violate the Fourth Amendment or Article I, Section 17 of the Idaho Constitution when police reasonably rely upon a landlord's consent to search where the facts substantiate that the tenant has apparently abandoned the premises, even if the landlord has no actual authority to consent. Under the facts of this case, the detectives' reliance upon the landlord's consent to search was reasonable. The district court's denial of the motion to suppress is affirmed.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS, concur.