186 P.3d 688

STATE of Idaho, Plaintiff–Respondent,

v.

Robert Martin FANCHER, Defendant–Appellant.

No. 33253.

Court of Appeals of Idaho.

June 5, 2008.

Molly J. Huskey, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daniel W. Bower, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Chief Judge.

Robert Martin Fancher appeals from the denial of his motion to suppress evidence. We reverse in part and affirm in part.

## I.

## BACKGROUND

In June, 2005, Angela Marshall was appointed as the temporary emergency guardian and conservator for James Strong, an incapacitated adult. Pursuant to that authority, Marshall issued two letters to the Boundary County Sheriff's Office, requesting that "all persons currently at or residing at the property of George Strong, be trespassed from his property immediately," and authorizing law enforcement officers to search the entirety of Strong's property.[1] Bonner's Ferry Police officers responded to Strong's property that same day to conduct the search and remove everyone from the property.

---

1. There is no evidence that Marshall ordered Fancher to vacate Strong's property or took any steps to evict him before requesting the Sheriff remove him from the premises.

When they arrived, Strong and Isayah Skinner, a juvenile, were both present in the main residence. While searching the main residence, the officers encountered a locked door. They were informed that this was "Marty" Fancher's bedroom, and that he possessed the only key. Upon further inspection, the officers determined that the door could be locked only from the inside; it was not a lock typically opened by a key. By applying a limited amount of force, the officers were able to open the door and gain access to the room. In plain view inside the room were assorted pieces of drug paraphernalia. Further inspection revealed more paraphernalia and over thirty-one grams of marijuana, along with scales and baggies for individual packaging. During this search, Fancher arrived at the house and admitted to using marijuana and selling it to friends, as well as using methamphetamine. Following Fancher's arrest, officers interviewed Skinner and Angelica Lindsey, Fancher's niece, who was a minor. Lindsey shared a bedroom with Skinner in the residence, and both admitted to police that they delivered marijuana for Fancher, and used it with him. Skinner further informed officers that Fancher had a hiding spot on the property where he concealed drugs and paraphernalia.

Fancher was charged with possession of a controlled substance with the intent to deliver, I.C. § 37–2732(a)(1)(A), distribution of a controlled substance to persons under the age of eighteen, felony, I.C. § 37–2737, and manufacture or delivery of a controlled substance where children are present, I.C. § 37–2737A. He filed a motion to suppress the evidence obtained in the search of his room, alleging that Marshall did not have the authority to consent to the search. He also moved the court to suppress all statements made by him as fruits of the poisonous tree. The district court denied Fancher's motion, whereupon he entered into a plea agreement, reserving his right to appeal from the denial of his motion. Fancher pled guilty to possession of a controlled substance with intent to

deliver, and the remaining charges were dismissed. The district court imposed a unified sentence of five years, with three years determinate. This appeal followed.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

## DISCUSSION

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures.[2] *State v. Spencer,* 139 Idaho 736, 738, 85 P.3d 1135, 1137 (Ct.App.2004). Specifically, a person has the right to "be secure in their persons, houses, papers, and effects." Fourth Amendment; Idaho Const. art. I, § 17. This does not imply that no search of a man's home will occur unless he consents; rather, it means that no "search will occur that is 'unreasonable.'" *Illinois v. Rodriguez,* 497 U.S. 177, 183, 110 S.Ct. 2793, 2799, 111 L.Ed.2d 148, 158 (1990). A man's residence is "a place especially protected against unreasonable police intrusion" pursuant to

---

**2.** Although Fancher contends that both constitutions were violated, he provides no reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in

this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Fancher's claims. *See State v. Schaffer,* 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct.App.1999).

these constitutional safeguards. 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 2.3 (2004).

## A. Reasonable Expectation of Privacy

 The state contends that Fancher has no basis to object to the search of his room in Strong's house, because he had no reasonable expectation of privacy in that room. Application of the constitutional safeguards from unreasonable search and seizure depends on whether the person invoking protection had a justifiable, reasonable, or legitimate expectation of privacy which was invaded by some governmental action. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580–81, 61 L.Ed.2d 220, 226–27 (1979); *Spencer*, 139 Idaho at 738, 85 P.3d at 1137. As such, a Fourth Amendment analysis involves a determination of whether the defendant has an actual, subjective expectation of privacy and, if so, whether the defendant's expectation of privacy, when viewed objectively, was reasonable under the circumstances. *State v. Wilkins*, 125 Idaho 215, 222, 868 P.2d 1231, 1238 (1994); *Spencer*, 139 Idaho at 738, 85 P.3d at 1137. An expectation of privacy is objectively reasonable when it is legitimate, justifiable, and one society should both recognize and protect. *Spencer*, 139 Idaho at 738, 85 P.3d at 1137; *State v. Johnson*, 126 Idaho 859, 862, 893 P.2d 806, 809 (Ct.App.1995). Such expectation of privacy must be more than a subjective expectation of not being discovered. *Rakas v. Illinois*, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387, 401 n. 12 (1978); *Spencer*, 139 Idaho at 738–39, 85 P.3d at 1137–38. The burden is on the defendant to prove the existence of a legitimate expectation of privacy. *Spencer*, 139 Idaho at 739, 85 P.3d at 1138; *State v. Dreier*, 139 Idaho 246, 251, 76 P.3d 990, 995 (Ct.App.2003).

 The district court specifically found that Fancher was living with George Strong and managing his affairs for him. This conclusion is supported by substantial evidence. Detectives knew that Fancher had been living on the property for some time, and had reason to believe that Fancher stayed in one of the rooms in the house. In fact, Fancher resided with Strong for as many as nine months prior to the search and it was under-

stood by police that Strong and Fancher had the same address. The state failed to show that Fancher was residing in Strong's home without permission to do so. Therefore as a resident of Strong's house, Fancher had an expectation of privacy. *See, e.g., State v. Benson*, 133 Idaho 152, 154 n. 2, 983 P.2d 225, 227 n. 2 (Ct.App.1999) (finding reasonable expectation of privacy where Benson was an overnight guest on prior occasions and particularly on the night of his arrest); *United States v. Davis*, 332 F.3d 1163, 1167 (9th Cir.2003) (holding that even an overnight houseguest has a legitimate expectation of privacy in the residence). Additionally, Fancher took specific steps to maintain his privacy within Strong's house. By locking the door, Fancher was protecting his privacy from the general public, as well as from the other residents in the house. *See State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct.App.1998) (determining legitimate expectation of privacy based on "the citizen's efforts to protect his own privacy from observation by the general public," considering social norms "and the nature of the premises"). Fancher's reasonable expectation of privacy has been recognized by this and other courts. *See State v. Palmer*, 138 Idaho 931, 934, 71 P.3d 1078, 1081 (Ct.App.2003) (holding that overnight guests have a legitimate expectation of privacy in the home of their host); *United States v. Murphy*, 516 F.3d 1117 (9th Cir.2008) (concluding that neither the lack of an ownership interest in a particular space, nor the absence of rent payments, eliminated a legitimate expectation of privacy in the space where defendant lived with permission from the owner). Fancher met his burden to show that he had an expectation of privacy in the premises.

## B. Consent to Search

 Although a warrantless entry or search of a residence is generally illegal and violates the Fourth Amendment, such an entry or search may be made reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct.App.1998). In such instances, the state has the burden of demonstrating

consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct.App.1997). Here, Fancher did not consent to the search of his room, Marshall did, and Fancher claims she had no authority to do so. Consent need not come directly from the person whose property is searched, but may come from a "third party who possesses common authority over the premises." *Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797, 111 L.Ed.2d at 156. Common authority arises out of "mutual use of the property by persons generally having joint access or control for most purposes." *Id.;* *State v. Brauch*, 133 Idaho 215, 219, 984 P.2d 703, 707 (1999). The state has the burden of establishing common authority. *Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797, 111 L.Ed.2d at 156. The district court held that Fancher failed to establish exclusive control over his room that would bar Marshall from providing effective consent to the search. Without any evidence as to the arrangement between Fancher and Strong, the court assumed that Strong, as the owner of the property, would have the ability to enter all portions of the home, including Fancher's room. Thus, the district court reversed the burden of proof established in *Rodriguez* and placed it with Fancher to disprove common authority.

### 1. Actual authority to consent

Marshall's authority to consent to a search of Strong's property arises from her appointment as temporary emergency guardian and conservator for Strong and his property. Therefore, Marshall acted in the capacity of Strong, and possessed any authority that he himself could have exercised. *See* I.C. §§ 15–5–407A, 15–5–408. Fancher contends that Marshall lacked the actual authority to consent to a search of his room because Strong did not have access to the room or control over it for most purposes.

Co-inhabitants assume the risk that one of them may consent to a search of common areas and items. *Johnson*, 110 Idaho at 523, 716 P.2d at 1295. However, that consent extends only so far as common areas and items in the common areas over which the inhabitants share authority. *State v.*

*Barker*, 136 Idaho 728, 731, 40 P.3d 86, 89 (2002). The evidence adduced at the hearings on Fancher's motion to suppress reveals that Skinner believed Fancher's room was locked with a key, and that only Fancher had the key to open the door. While the door was locked, it was not a key-type lock, but rather locked from the inside. Even so, the state produced no evidence showing that Strong or any of the other inhabitants accessed Fancher's room when he was not present, despite the fact that the entire home belonged to Strong. The scant evidence available indicates that Fancher took steps to keep his room private, and that at least one of his co-inhabitants regarded his room as private. While Strong's ownership interest in the house is a factor for consideration, authority to consent does not arise "from a mere property interest." *United States v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242, 250 n. 7 (1974); *see also State v. Benson*, 133 Idaho 152, 156, 983 P.2d 225, 229 (Ct.App.1999). Even if Fancher was a guest in Strong's home, that status alone does not cloak Strong with common authority over this particular room. Due to the complete lack of evidence showing Strong had access to Fancher's room, customarily entered the room when Fancher wasn't present, or kept personal belongings in Fancher's room, the state failed to meet its burden of establishing common authority. *See State v. Ham*, 113 Idaho 405, 406–07, 744 P.2d 133, 134–35 (Ct.App.1987) (holding that mother had common authority to consent to a search of son's bedroom because son failed to pay rent as promised, son shared the room with his younger brother, and son was not allowed to lock the door unless he was home such that mother entered the room when son was not home); *see also State v. McCaughey*, 127 Idaho 669, 672–73, 904 P.2d 939, 942–43 (1995); 4 LaFave § 8.5(d). Without common authority over Fancher's room, Marshall lacked actual authority to consent to the police search of his room.

### 2. Apparent authority to consent

If a person consenting to a search does not have actual authority, but government agents reasonably believe that

the person has authority, a warrantless search may still be valid. *Rodriguez,* 497 U.S. at 188–89, 110 S.Ct. at 2801, 111 L.Ed.2d at 161–62; *Brauch,* 133 Idaho at 219, 984 P.2d at 707; *State v. Hawkins,* 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). The police belief must be objectively reasonable that the person giving consent has the authority to do so. *Rodriguez,* 497 U.S. at 188, 110 S.Ct. at 2801 *Brauch,* 133 Idaho at 219, 984 P.2d at 707. Law enforcement officers may not simply "accept a person's invitation to enter premises" if the surrounding circumstances are "such that a reasonable person would doubt [that person's authority to consent] and not act . . . without further inquiry." *Rodriguez,* 497 U.S. at 188, 110 S.Ct. at 2801, 111 L.Ed.2d at 161. Therefore, police have a duty of reasonable investigation before they may rely upon the authority of a third party to consent to a search. *Brauch,* 133 Idaho at 221, 984 P.2d at 709.

■ At the time of the search of Strong's home, officers were aware that Fancher had been living on the property as Strong's caretaker for at least the previous nine months. However, not even Marshall knew how Fancher came to be living with Strong or whether Strong had common authority over Fancher's room. Marshall's letter requested that all persons found on the property be "trespassed immediately." This was a very ambiguous statement, possibly but not clearly indicating Marshall's belief that Fancher had no permission to be there. Whether such permission had been given to Fancher, expressly or impliedly, was not determined by the deputies. If the request for the search had come directly from Strong, the officers would have been obligated to investigate further in order to determine whether Strong had authority over all parts of the house, including Fancher's room, such that he could consent to the search. The fact that the consent for the search came instead from Marshall, and not Strong himself, heightened the officers' obligation to inquire further.

It was not objectively reasonable for the officers to rely on Marshall's ambiguous letter as demonstrating authority to consent to the search of Fancher's room without further investigation. Without legitimate consent for the search of Fancher's room, the warrantless entry was unreasonable and violated Fancher's Fourth Amendment rights.

## C. Suppression of Illegally Obtained Evidence

Fancher requests the suppression of all evidence seized as a result of the illegal search of his room in Strong's home, including any statements made to police after the search, and the officers' own observations during and after the search. Although Fancher does not identify the evidence to be suppressed with any specificity, he presumably intends to include the physical evidence of drugs and drug paraphernalia found in his room, as well as his admissions of drug purchases, sales, and personal consumption.

■ Pursuant to the exclusionary rule, evidence obtained as a result of an illegal search is inadmissible in the criminal trial of a defendant. *Brauch,* 133 Idaho at 219, 984 P.2d at 707; *Johnson,* 110 Idaho at 524, 716 P.2d at 1296. This includes not only evidence uncovered as a direct result of the illegal search, but also any evidence later discovered that is a "fruit of the poisonous tree." *Segura v. United States,* 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599, 608 (1984). However, evidence will not be suppressed if its seizure is "so attenuated as to dissipate the taint" of the original illegality. *Id.* at 805, 104 S.Ct. at 3385, 82 L.Ed.2d at 608. Also admissible despite an illegal search or seizure is evidence that was discovered through an independent source, and evidence whose discovery was inevitable. *Davis,* 332 F.3d at 1171.

■ The drugs and drug paraphernalia seized inside Fancher's room were obtained as a direct result of the illegal search of his room. Therefore they must be suppressed. When Fancher arrived at the house, he agreed to participate in an audio-recorded interview with officers, wherein he was confronted with the evidence already seized by the officers. Police questioning stemming from illegally seized evidence addressing that evidence is an exploitation of the illegality of the original search, and therefore any incriminating responses must

also be suppressed. *Davis*, 332 F.3d at 1171; *see also* 6 LaFave § 11.4(c). The suspect, aware that the officers already know about his wrongdoing, is pressured into speaking with them and admitting to behavior that he would not otherwise acknowledge if the officers didn't already have proof of those activities. *Id.* As with the drugs and drug paraphernalia, Fancher's statements to police at Strong's residence immediately after the search must be suppressed.

■ Fancher's niece, Lindsey, and Skinner, her boyfriend, were also interviewed by officers after the search of Strong's residence. Both juveniles made statements further implicating Fancher in drug dealing, and admitting to being mules for Fancher. They informed officers that Fancher supplied them with marijuana for their own personal use as well. After the interviews, the two led officers to a location on the property where Fancher regularly hid drugs, paraphernalia, and other personal belongings. However, Skinner's and Lindsey's identities were not discovered as a result of the illegal search. *See, e.g., State v. McBaine*, 144 Idaho 130, 135, 157 P.3d 1101, 1106 (Ct.App.2007) (finding the deputy's unlawful entry into defendant's home did not reveal the identities of witnesses where officers already knew of one witness who was clearly visible through the open doorway, along with others). Prior to searching Strong's home, officers were aware that there were multiple people living in the house; officers encountered Skinner before entering the main residence and knew he lived there before they searched Fancher's room. Moreover, Marshall had told officers before they entered that she believed there were drugs on the premises. Therefore, the officers already had a motive to question the occupants about drugs before they found drugs and paraphernalia in Fancher's room. Fancher bears the initial burden of going forward with evidence to show a factual nexus between the illegal search of his room and the state's acquisition of evidence from Skinner and Lindsey, which he has failed to satisfy. *McBaine*, 144 Idaho at 133, 157 P.3d

at 1104; *see also Alderman v. United States*, 394 U.S. 165, 183, 89 S.Ct. 961, 972, 22 L.Ed.2d 176, 192–93 (1969). Evidence obtained as a result of those two interviews will not be suppressed. *See McBaine*, 144 Idaho at 134, 157 P.3d at 1105.[3]

## IV.

### CONCLUSION

The warrantless search of Fancher's room violated his Fourth Amendment right to be free from unreasonable searches and seizures. Marshall lacked the authority to consent to a search of Fancher's room, and the police's belief in Marshall's authority was not objectively reasonable. Therefore, the physical evidence seized during the search of Fancher's room and his statements to police at the conclusion of the search must be suppressed. Evidence discovered pursuant to interviews with Skinner and Lindsey is admissible. The district court's order denying Fancher's motion to suppress is reversed in part and affirmed in part.

Judge LANSING and Judge PERRY concur.

---

**3.** Fancher's failure to further specify any evidence that should be suppressed as a result of the illegal search, or the grounds for such suppres-

sion, renders this Court unable to consider any issues beyond those already discussed.