**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 34149**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2009 Opinion No. 20** |
| Plaintiff-Respondent, | ) |
| | ) **Filed: March 25, 2009** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| COREY RICHARD MUNOZ, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Michael E. Wetherell, District Judge.

Order denying motion to suppress evidence, <u>reversed</u>, and <u>case remanded</u>.

Robyn A. Fyffe of Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daniel W. Bower, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Chief Judge

Corey Richard Munoz pleaded guilty to felony possession of marijuana in excess of three ounces, reserving the right to appeal from the district court's order denying his motion to suppress evidence.  Because we conclude that there was not credible evidence presented on the suppression motion sufficient to support the district court's findings, we reverse the order and remand.

**I.**

**FACTS AND PROCEDURE**

Detective Jason Pietrzak and another plainclothes detective with the Garden City Police Department were hunting for Daryl Marsh, who was wanted on felony probation violation and eluding charges.  They obtained information that Marsh might be residing at a local trailer park.  Armed with a photograph and physical description of Marsh, they went to that location and showed the photograph to a resident of the park, who told the detectives that he believed that

1

Marsh resided there. The detectives parked their unmarked vehicle near the entrance to the park and waited.

A vehicle arrived, passing within a few feet of the officers, and went into the park. Defendant Munoz was the owner and driver of the vehicle. The officers believed that the front seat passenger in the vehicle was Marsh. The detectives lost sight of the vehicle and waited for it to reappear. When it did so, it had three occupants: a female driver, the man suspected to be Marsh sitting in the back seat, and Munoz sitting in the front passenger seat. Because Marsh was apparently considered dangerous, the officers called for the assistance of other officers to conduct a high-risk stop. Three uniformed officers in separate police cruisers responded and effectuated the stop. The three occupants of the vehicle were removed from it at gunpoint and were handcuffed and frisked.

The back seat passenger turned out not to be Marsh, but instead was Munoz's friend Charles Pfisterer. Pfisterer told the officers that he was wanted on a warrant and, upon confirmation of this information with dispatch, he was arrested. At some point during the encounter, Detective Pietrzak observed a chunk of marijuana on the floorboard of the stopped vehicle, near where Munoz had been sitting. Pietrzak then questioned Munoz about ownership of the drug. According to Pietrzak, at the time of his questioning of Munoz, all police firearms had been holstered, Munoz's handcuffs had been removed, the tension caused by the high-risk stop had subsided, and the tone of his conversation with Munoz was somewhat relaxed. Pietrzak said that Munoz admitted that the marijuana in the vehicle was his and that when asked whether he had any additional marijuana, Munoz removed from his pocket a baggie containing more than three ounces of the drug. Munoz testified differently, contending that he never admitted ownership of the marijuana in the vehicle and that an officer pulled the baggie out of his pocket without asking any questions or obtaining his consent.

Munoz was charged with possession of marijuana in excess of three ounces, Idaho Code § 37-2732(e), and thereafter filed a motion to suppress the physical evidence found in the vehicle and on his person, contending that his Fourth Amendment rights were violated. He also sought suppression of his statement acknowledging ownership of the marijuana in the car, contending that the detective's questioning without a prior advisement of rights violated *Miranda v. Arizona*, 384 U.S. 436 (1966).

The district court denied the suppression motion in all respects. It held that the vehicle stop was not illegal because the detectives' belief that the second man was Marsh was a reasonable mistake, that Pietrzak's observation and seizure of the marijuana in the vehicle was lawful, that Munoz was not in custody when questioned so *Miranda* warnings were not required, and that Munoz had voluntarily removed the marijuana from his pocket. Munoz then entered a conditional guilty plea, reserving the right to appeal the order on his suppression motion. Munoz appeals, arguing that the district court erred in denying the suppression motion.

## II.

## ANALYSIS

Munoz raises several challenges to the constitutionality of the vehicle stop, the vehicle search, the interrogation, and the seizure of drugs on his person. Because we find it dispositive, we begin with Munoz's argument that the district court erred in finding Detective Pietrzak's testimony at the suppression hearing credible regarding the discovery of marijuana in the vehicle.

When reviewing a trial court's denial of a defendant's motion to suppress evidence, this Court will uphold the trial court's findings of fact if they are not clearly erroneous. *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007). Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence. *Id.* at 659, 152 P.3d at 20. Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Miller v. Callear*, 140 Idaho 213, 216, 91 P.3d 1117, 1120 (2004); *State v. Mitchell*, 130 Idaho 134, 135, 937 P.2d 960, 961 (Ct. App. 1997). Deference is also given to the trial court's decisions regarding the credibility of witnesses, the weight to be given to conflicting evidence and the drawing of factual inferences. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995). We freely review the trial court's determination as to whether, on the facts found, constitutional standards were violated. *Henage*, 143 Idaho at 658, 152 P.3d at 19.

An officer's warrantless entry of a vehicle to search it or to seize items within is presumed to violate the Fourth Amendment's prohibition against unreasonable searches unless the State shows that it fell within one of the narrowly drawn exceptions to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Gomez*, 144 Idaho 865, 870, 172 P.3d 1140, 1145 (Ct. App. 2007). When a warrantless search has been challenged, it is the State's burden to prove the applicability of such an exception. *Coolidge v. New*

3

*Hampshire*, 403 U.S. 443, 455 (1971); *State v. Brauch*, 133 Idaho 215, 218-19, 984 P.2d 703, 706-07 (1999). If the government fails to meet its burden, the evidence obtained as a result of the search, including later-discovered evidence derived by exploitation of the original illegal search, is inadmissible in court. *Segura v. United States*, 468 U.S. 796, 804 (1984); *Brauch*, 133 Idaho at 219, 984 P.2d at 707.

Two warrant exceptions were in play on Munoz's challenge to the officer's entry of his vehicle and seizure of marijuana found there. One such exception covers searches of automobiles incident to the arrest of an occupant. When officers have arrested an occupant of an automobile, they may enter and search the passenger compartment incident to that arrest. *New York v. Belton*, 453 U.S. 454 (1981); *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005). The other pertinent warrant exception is the automobile exception, which allows officers to enter and search an automobile if they have probable cause to believe that the automobile contains contraband or evidence of a crime. *United States v. Ross*, 456 U.S. 798, 808-09 (1982); *State v. Veneroso*, 138 Idaho 925, 929, 71 P.3d 1072, 1076 (Ct. App. 2003). Observations of the interior of a vehicle made from a vantage point outside the vehicle do not constitute searches. *Texas v. Brown*, 460 U.S. 730, 740 (1983); *State v. Metzger*, 144 Idaho 397, 401, 162 P.3d 776, 780 (Ct. App. 2007). Such observations made from outside may provide probable cause which, under the automobile exception, will justify an officer's entry into the vehicle to seize contraband that was observed in open view. *Brown*, 460 U.S. at 742-44.

To demonstrate a warrant exception in this case, the State relied upon Detective Pietrzak's testimony at the suppression hearing as well as a transcript of the preliminary hearing at which the detective also testified. Based on Detective Pietrzak's testimony at the suppression hearing, the district court found that Pietrzak initially observed a chunk of marijuana on the floorboard of the vehicle from a position outside the vehicle as he looked through an open door, so the discovery of the marijuana was not the product of a search, and the subsequent entry of the vehicle to seize the marijuana was lawful. Munoz argues that because Detective Pietrzak testified at the preliminary hearing to an entirely different version of his discovery of the marijuana, his testimony is so lacking in credibility that it cannot support the district court's findings.

Munoz is correct in his assertion that the detective's testimony at the two proceedings was materially inconsistent and irreconcilable. At the preliminary hearing, the detective testified

4

that he discovered the chunk of marijuana in Munoz's car during a search incident to the arrest of Pfisterer, the back seat passenger. This was developed, on cross-examination, as follows:

> Q. All right. Well, I want to make sure I am understanding what your theory was. And I think you're telling me now that the only reason you go back to the vehicle to conduct a search is your belief it is a search incident to arrest of Mr. Pfisterer.
>
> A. Absolutely.
>
> Q. All right. So, we're tracking on that. There is no other reason. Correct?
>
> A. At which--the actual physical search of the car, when I found the marijuana? Yes, that's incident to Mr. Pfisterer's arrest.
>
> Q. All right. Now, the marijuana you say you found in the vehicle, I believe, you said was on the floor board?
>
> A. The front seat floor board, yes, sir, on the passenger's side.
>
> Q. Are you telling me it was in a plain view?
>
> A. Oh, absolutely.
>
> Q. And you then--did you look in through the window, or did you open the door as though you were going to climb in?
>
> A. Oh, I opened the door and began searching. I looked above the visor, looked on the dashboard. At some point, I looked on the passenger floor and then found the marijuana.

At the outset of the suppression hearing, the district court summarized this evidence presented at the preliminary hearing:

> [A]ccording to what I read [in the preliminary hearing transcript], they said they checked, there was a warrant on the computer, and they made the arrest and then they made the search pursuant to the warrant.
>
>    Once they made the arrest pursuant to the warrant, they have the right not only to search the individual arrested, but also the vehicle in which he is a passenger.

Detective Pietrzak thereafter took the stand at the suppression hearing and, in response to the prosecutor's questions, testified in a quite contrary fashion:[1]

> A. Well, prior to actually speaking to Mr. Pfisterer about that and spending time on radio traffic we needed to ensure there was only three people in the vehicle. I walked up and made sure of that visually.
>
> Q. Okay. So in the time between talking to Mr. Pfisterer--well, excuse me, the time that the occupants were pulled out of the vehicle and the time that Mr. Pfisterer (sic) was arrested on the warrant, you went back to the vehicle just to make sure everybody was out of the vehicle?
>
> A. Correct.
>
> Q. Did you notice anything inside the vehicle of evidentiary value at that time?
>
> A. Yes, I did.

---

[1]    Officer Sarrazolla also testified at the suppression hearing, but his testimony did not touch upon the discovery of the marijuana in the automobile or the interrogation of Munoz.

5

Q. What did you notice?
A. Yes, there was a large piece of green dried marijuana that was on the front passenger side floorboard.
Q. Was it in plain view at the time?
A. Oh, absolutely. It was in the middle of the floorboard.
Q. Now, did you have to open the windows or the cars or anything to view that?
A. No, the door--on the passenger's side the door was open and on the driver's side the door was closed.
Q. So you could view that standing from the street where you were?
A. Yes.
Q. Did you--what, if anything, did you do at that time upon seeing the marijuana?
A. Nothing at that time. I believed that we had Mr. Marsh and he was obviously the priority at that time to go back and start speaking with him.
Q. Okay. So you then--you left the marijuana there and went back and spoke with Mr. Pfisterer it turns out?
A. Yes. Yes.
Q. And you subsequently arrested Mr. Pfisterer on that warrant?
A. Correct.

Pietrzak also testified that sometime after questioning Munoz, he returned to the vehicle to remove the marijuana.

In its order denying the suppression motion, the district court stated: "A reading of the preliminary hearing transcript reveals some confusion concerning whether Detective Pietrzak saw the marijuana on the vehicle floorboard because he was 'clearing' the car or because he was performing a search of it incident to the arrest of Mr. Pfisterer." The district court then described Pietrzak's testimony at the suppression hearing as credible and found that the observation of the marijuana occurred as described by the detective at the suppression hearing. That is, the district court found that the marijuana was in open view, and, implicitly, that the detective first viewed the marijuana from a position outside the vehicle.

Contrary to the district court's assessment, however, there is no confusion in Detective Pietrzak's preliminary hearing testimony. He unambiguously and emphatically testified that after arresting Pfisterer on a warrant, he returned to the vehicle to do a search incident to the arrest. He related specific details of his search of the vehicle in an unequivocal manner, saying that he opened the door and began searching, looking above the visor and on the dashboard, and then on the passenger floorboard, where he saw the marijuana. Detective Pietrzak's testimony at the suppression hearing presented an entirely different version of the search--that *before* speaking to and arresting Pfisterer, he visually checked the vehicle to make sure no one was left inside and, *without opening any doors or windows or entering the car*, saw the chunk of

6

marijuana from outside the vehicle through an open door. These two versions of the facts cannot be harmonized, given the recitation of detail and Detective Pietrzak's expressions of certainty on both occasions.

It is impossible to determine whether Detective Pietrzak suffered a mere lapse of memory or whether he intentionally sought to validate the discovery of the marijuana on different grounds in the two hearings. In the end, for purposes of appellate review, it does not matter, for the inconsistency compels the question whether the detective can be believed at all. As a standard of appellate review, we give great deference to a trial court's credibility determinations. *Rueth v. State*, 103 Idaho 74, 77, 644 P.2d 1333, 1336 (1982); *Veneroso*, 138 Idaho at 928, 71 P.3d at 1075; *State v. Miller*, 131 Idaho 288, 295, 955 P.2d 603, 610 (Ct. App. 1997). This is as it should be, for while appellate courts are limited to review of a cold record, a trial court can assess the demeanor of witnesses as they testify, which may affect the credibility or weight ascribed to the testimony. However, a credibility determination, like other factual determinations, must be set aside if it is clearly erroneous because it is not supported by substantial and competent evidence. *See Stuart v. State*, 127 Idaho 806, 813-14, 907 P.2d 783, 790-91 (1995). The district court's finding that Detective Pietrzak was a credible witness cannot be upheld where the record plainly shows that he was not. He presented, under oath, two irreconcilable versions of events and at the second hearing made no effort to retract or correct his earlier sworn testimony. In our view, a witness who has testified under oath to two patently inconsistent descriptions of events and has not offered any explanation for the inconsistency cannot be deemed "credible" in either instance.

This circumstance can be contrasted with that in *State v. Davis*, 139 Idaho 731, 733-34, 85 P.3d 1130, 1132-33 (Ct. App. 2003), where an officer testified to facts at a suppression hearing that differed from the content of his written report and from statements he had made to the prosecutor. The magistrate recognized the discrepancy, but found the suppression testimony credible and denied the suppression motion. We expressed some skepticism concerning the credibility determination, but ultimately deferred to the magistrate because the witness had presented a plausible explanation for his differing recitations of the facts. Here, in contrast, Pietrzak presented, *under oath*, two irreconcilable versions of events and proffered no excuse or explanation for the inconsistency.

7

We have considered the irony that under either of the detective's two versions of events, the entry of Munoz's automobile would have been lawful, either as a search incident to Pfisterer's arrest or as a search pursuant to the automobile exception based on probable cause acquired through an observation made from the exterior of the vehicle. Nevertheless, it is impossible to hold the acquisition of the evidence lawful on an "either/or" basis because the detective's self-contradiction makes it impossible to give credence to either version. In the absence of any credible evidence describing how the officer found and seized the marijuana in the vehicle, the State has not met its burden to prove that the officer's conduct fell within an exception to the warrant requirement.

The detective's lack of credibility concerning the discovery of the marijuana in the vehicle undermines the credibility of all of his testimony, including but not limited to Munoz's alleged admission that he owned the marijuana in the vehicle and his alleged production of the marijuana from his pocket. Even if the detective's testimony on these latter points is accepted as true, Munoz's admission and the marijuana found on his person would have to be suppressed as fruit of the presumptively unlawful vehicle search. Evidence that is come at by exploitation of a Fourth Amendment violation must be suppressed. *Segura*, 468 U.S. at 804; *Wong Sun v. United States*, 371 U.S. 471 (1963); *Brauch*, 133 Idaho at 219, 984 P.2d at 707. Here, by Detective Pietrzak's own testimony, Munoz's alleged admission of ownership of the marijuana in the car and disclosure of additional marijuana on his person were the result of being confronted by the detective with the marijuana found in the vehicle. Thus, the evidence gained through this interrogation of Munoz was direct and immediate fruit of the earlier Fourth Amendment violation. It follows that all of this evidence must be suppressed.

For these reasons, we need not address any other issue presented in this appeal. The district court's order denying Munoz's motion to suppress the marijuana and his admission of ownership of the marijuana is reversed and the case is remanded for proceedings consistent with this opinion.

Judge PERRY and Judge GUTIERREZ **CONCUR.**