**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40423**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Opinion No. 29 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 17, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| SANTOS TENA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael R. Crabtree, District Judge.

Order denying motion to suppress, affirmed.

Sara B. Thomas, State Appellate Public Defender; Ben Patrick McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Santos Tena appeals from his judgment of conviction for possession of a controlled substance, methamphetamine, a violation of Idaho Code § 37-2732(c)(1). Tena alleges the district court erred by denying his motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Tena, thirty-one years old, lived in a room in his parents' basement. Two officers arrived at the residence with warrants for Tena's arrest. As the officers approached the residence, the garage door opened. Unable to see anyone inside, the officers entered the garage and knocked on the door to the house. Tena's mother answered the door and explained that Tena was asleep in his room. When she went downstairs to retrieve him, the officers heard her and Tena arguing. By then a third officer had arrived and the officers promptly went downstairs and arrested Tena. As one of the officers escorted Tena to the patrol car to transport him to jail, Tena yelled not to

1

let the officers into the house.  The officer then secured Tena in the patrol car located to the north of the residence.

The other two officers remained at the residence to speak with Tena's mother.  The officers spoke with her in English and one officer translated in Spanish, as necessary.  The officers asked if she owned the house and if she had access to it.  She affirmatively answered both questions.  She also described her son as lazy, and said that he hardly ever left his room and that she brought him meals and collected his laundry from the room.  The officers then asked for consent and explained that consent allowed them to search the house and Tena's bedroom.  After the officer translated the relevant part of a consent form, Tena's mother orally gave consent and signed the form.  Then, without hesitation, she took the officers to Tena's bedroom.  The room's door stood partially open and it had an old skeleton key lock on it.  Tena's mother later indicated the door was never locked.  The officers searched the room and found methamphetamine.

Tena subsequently filed a motion to suppress the evidence found in his room.  The district court denied the motion, holding Tena's mother had apparent authority to grant consent.  Tena entered a conditional guilty plea and the court sentenced him.  Tena timely appeals.

## II.

## ANALYSIS

Tena argues his mother lacked apparent authority to consent because he objected to allowing officers into the house.  The standard of review of a suppression motion is bifurcated.  When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found.  *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).  At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court.  *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment of the United States Constitution and Article I, Section 17 of the Idaho Constitution protect the right of the people to be free from unreasonable searches and seizures.  Without a warrant, searches and seizures within a home are presumptively unreasonable.  *Kentucky v. King*, __ U.S. __, __, 131 S. Ct. 1849, 1856 (2011); *State v. Hansen*, 151 Idaho 342, 346, 256 P.3d 750, 754 (2011).  A well-established exception to the warrant

requirement is an individual's consent to search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Robinson*, 152 Idaho 961, 965, 277 P.3d 408, 412 (Ct. App. 2012). The State must establish that officers lawfully obtained consent. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *Hansen*, 151 Idaho at 346, 256 P.3d at 754. Consent must come from someone with actual authority to consent or from someone whose authority is reasonably apparent. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006); *Hansen*, 151 Idaho at 346, 256 P.3d at 754. When a third party grants consent, "actual authority exists if the third party shares with the defendant 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *State v. Aschinger*, 149 Idaho 53, 56, 232 P.3d 831, 834 (Ct. App. 2009) (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)). The United States Supreme Court has explained that common authority rests on:

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock*, 415 U.S. at 171 n.7. Accordingly, co-inhabitants assume the risk that one of them may consent to a search of common areas and items. *Robinson*, 152 Idaho at 965, 277 P.3d at 412 (citing *State v. Johnson*, 110 Idaho 516, 523, 716 P.2d 1288, 1295 (1986)). However, that actual authority extends only so far as common areas and items in the common areas over which the inhabitants share authority. *Robinson*, 152 Idaho at 965, 277 P.3d at 412. On the other hand, apparent authority exists when, under the totality of circumstances, the officer reasonably believes that the third party possesses actual authority to consent. *Id.* at 965-66, 277 P.3d at 412-13 (citing *Randolph*, 547 U.S. at 109). Apparent authority analysis is limited to the information known to officers prior to a search of the premises. *Robinson*, 152 Idaho at 966, 277 P.3d at 413.

The district court concluded that regardless of whether Tena's mother had actual authority to consent, she had apparent authority to consent. The court relied on the following information known to the officers when they conducted the search: the residence belonged to Tena's parents; Tena's mother had access to the house; nothing suggested Tena locked his bedroom door, had a key to the door, or had a means to exclude his parents from the room; Tena's mother accessed the room to do Tena's laundry and bring him meals; and officers were unaware that Tena may have paid rent to stay at the residence. One of the officers also testified

that Tena's mother said she entered to clean the room. In its analysis, the district court did not discuss that Tena yelled to his mother not to let the officers in the house. One of the officers testified during the motion to suppress hearing that Tena "started yelling not to let [the officers] in the house as he was taken out to the car." Tena contends that apparent authority did not exist because of his objection. In arguing the officers had apparent authority to search, the State relies on the district court's reasoning. The State also asserts that Tena's yelling is not determinative because he only yelled to keep the officers out of the house and not his bedroom.

In support of his argument that officers unreasonably relied on his mother's apparent authority to consent, Tena offers *State v. Benson*, 133 Idaho 152, 983 P.2d 225 (Ct. App. 1999). In *Benson*, officers responded to a residence based on reports that someone was manufacturing methamphetamine. The homeowner answered the door and explained that her daughter lived in the detached garage next to the house. Officers contacted the daughter and her boyfriend at the garage, and both made it clear they did not want the officers on the property. The boyfriend was arrested for a baggie of marijuana hanging out of his shirt pocket, and the daughter was separated from her mother because she continued to scream at her mom not to talk with the officers. The daughter yelled that the officers did not have a warrant and not to give them permission to search. Having taken the mother aside, the officer asked her if the garage area was hers, if she had access to it, and if she had any possessions inside. The mother affirmatively responded to each question, and the officer then asked for consent to search the garage. The subsequent search revealed evidence of methamphetamine manufacturing.

We held that the mother lacked apparent authority to grant consent to search the garage.[1] *Id.* at 160, 983 P.2d at 233. In examining the reasonableness of an officer's belief that a third party has authority to consent, we explained that a court should examine: (1) the nature of the joint access to the premises; (2) the presence of nonconsenting parties; and (3) whether the nonconsenting party actively opposes entry and search. *Id.* at 158, 983 P.2d at 231 (quoting *United States v. Impink*, 728 F.2d 1228, 1233 (9th Cir. 1984)). We held that the officers did not have an objectively reasonable belief of authority because the daughter lived with her boyfriend

---

[1]     We also held that the mother lacked actual authority to grant consent to search the garage. *State v. Benson*, 133 Idaho 152, 156, 983 P.2d 225, 229 (Ct. App. 1999). The daughter babysat children in lieu of rent, locked the garage when she and her boyfriend were away, and only the daughter and boyfriend had keys to the lock.

4

in a detached garage, the mother accessed the garage with the limited purpose of storage, and both individuals staying in the garage strenuously objected to the officers' presence and entry. *Benson*, 133 Idaho at 159-60, 983 P.2d at 232-33. This Court emphasized that officers with such limited information are required to make a further inquiry in order to rely on the third party's consent when faced with an actively objecting party. *Id.* at 158-60, 983 P.2d at 231-33. A duty to further inquire may exist if the officers lack an objectively reasonable basis to believe authority exists.

However, *Benson* is distinguishable in a number of respects. First, Tena was not present and actively objecting. Officers arrested Tena and placed him in the patrol car to be transported to jail. Second, the circumstances of the joint access are markedly different. Tena's mother told officers she had access to his room to bring meals, do laundry, and clean the room. Unlike Tena's mother, the mother in *Benson* merely accessed the garage for the limited purpose of storage. Finally, the mother in *Benson* consented to the search of a detached garage; whereas here, the mother gave officers consent to search a room within the mother's own house. Thus, the first factor does not support requiring a further inquiry.

The remaining factors to be considered are Tena's presence and objection to the officers' entry. In *Georgia v. Randolph*, 547 U.S. 103 (2006), the United States Supreme Court examined the reasonableness of officers relying on the consent of a wife over the refusal of the present and objecting husband. Officers responded to the residence on a domestic dispute call. The wife informed the officers that her estranged husband used cocaine and that the house contained evidence of drug use. The officers asked for consent. The husband unequivocally refused, but the wife readily consented. The subsequent search revealed incriminating evidence.

The Court held "that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a *physically present* resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Randolph*, 547 U.S. at 120 (emphasis added). Because the husband was present and objecting, the officers unreasonably relied on the wife's consent.

In *Fernandez v. California*, __ U.S. __, 134 S. Ct. 1126 (2014),[2] the United States Supreme Court clarified the breadth of a co-tenant's ability to frustrate another tenant's consent.

---

[2] The district court and the parties did not have the benefit of *Fernandez*.

In that case, officers responded to the area to investigate a possible gang-related robbery. When officers arrived, they encountered a man who said that the "guy" was in the apartment. The officers then observed someone run into the same building the man had pointed out. The officers heard screaming and fighting coming from the building. Once backup arrived, they knocked and a woman answered the door who appeared upset and had visibly fresh injuries. An officer asked the woman to step outside to allow them to conduct a protective sweep of the residence. Fernandez, wearing only boxer shorts, stepped into view and told the officers they did not have the right to enter and that he knew his rights. Officers removed Fernandez from the residence and placed him under arrest. The robbery victim identified Fernandez as the initial assailant and officers then transported Fernandez to the police station. Approximately one hour later, one of the officers returned to the residence and obtained consent to search from the woman. The search resulted in the discovery of gang paraphernalia, evidence of the robbery, a knife, ammunition, and a sawed-off shotgun.

The Court reviewed the denial of Fernandez's motion to suppress and noted that *Randolph's* exception requires the objecting co-tenant's presence. *Fernandez*, __ U.S. at __, 134 S. Ct. at 1133. The Court stated that it "went to great lengths to make clear that its holding was limited to situations in which the objecting occupant is present." *Id.* The Court then addressed Fernandez's two arguments that *Randolph* should apply in his situation despite his absence. Fernandez first argued that *Randolph* should still apply because his absence was a result of the police having removed him. The Court rejected this argument and clarified language in *Randolph*[3] that suggested an officer's untoward motive could make a co-tenant's removal invalid. The Court explained that the relevant analysis is whether the officer's action was objectively reasonable. *Id.* at __, 134 S. Ct. at 1134 (quoting *King*, __ U.S. at __, 131 S. Ct. at 1859). The Court then held "that an occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason." *Fernandez*, __ U.S. at __, 134 S. Ct. at 1134. Thus, the removal of a defendant from the premises is proper so long

---

[3]     "So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection . . . ." *Georgia v. Randolph*, 547 U.S. 103, 121 (2006).

as officers do not effectuate the removal "by means of an actual or threatened violation of the Fourth Amendment." *See King*, __ U.S. at __, 131 S. Ct. at 1862 (officer-created exigencies are lawful unless officer's act was objectively unreasonable in creating the exigency).

Fernandez's second argument was that his objection, made at the premises, remained effective until he withdrew it. The Court again rejected Fernandez's argument. A continuing objection would not comport "with the 'widely shared social expectations' or 'customary social usage' upon which the *Randolph* holding was based." *Fernandez*, __ U.S. at __, 134 S. Ct. at 1135 (quoting *Randolph*, 547 U.S. at 111, 121). Once the objecting party is absent, the uncomfortable situation that existed from the co-tenant's objection is likely to cease with the co-tenant's absence. *Fernandez*, __ U.S. at __, 134 S. Ct. at 1135. The rule allowing a standing objection would also create numerous practical problems. The Court was concerned with the difficulty of determining the proper duration of a continuing objection, the existence of common authority over the premises after the passage of time, the procedure necessary to invoke the continued objection, and who would be bound by the objection. *Id.* at __, 134 S. Ct. at 1135-36. "If *Randolph* is taken at its word--that it applies only when the objector is standing in the door saying 'stay out' when officers propose to make a consent search--all of these problems disappear." *Id.* at __, 134 S. Ct. at 1136.

The Court then briefly addressed the presence requirement itself:

> In response to these arguments, petitioner argues that *Randolph's* requirement of physical presence is not without its own ambiguity. And we acknowledge that if, as we conclude, *Randolph* requires presence on the premises to be searched, there may be cases in which the outer boundary of the premises is disputed. The Court confronted a similar problem last Term in *Bailey v. United States*, [__ U.S. __, 133 S. Ct. 1031] (2013), but despite arguments similar to those now offered by petitioner, the Court adopted a rule that applies only when the affected individual is near the premises being searched. Having held that a premises rule is workable in that context, we see no ground for reaching a different conclusion here.

*Fernandez*, __ U.S. at __, 134 S. Ct. at 1136. The Court does not seem to adopt *Bailey's* "near the premises" rule, but the approach taken in *Bailey* provides guidance on how courts are to view an occupant's presence in the context of *Randolph*.

In *Bailey v. United States*, __ U.S. __, 133 S. Ct. 1031 (2013), the United States Supreme Court defined the geographic parameters of officers' authority to detain individuals while executing a search warrant. *Id.* at __, 133 S. Ct. at 1042 (holding officers could not rely on

authority under *Michigan v. Summers*, 452 U.S. 692, 705 (1981) because they were beyond immediate vicinity of premises to be searched); s*ee Michigan v. Summers*, 452 U.S. 692, 705 (1981) (holding "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted" (footnotes omitted)).[4]   The Court reviewed the justifications in *Summers*[5] and concluded:

> A spatial constraint defined by the immediate vicinity of the premises to be searched is therefore required for detentions incident to the execution of a search warrant.  The police action permitted here--the search of a residence--has a spatial dimension, and so a spatial or geographical boundary can be used to determine the area within which both the search and detention incident to that search may occur.  Limiting the rule in *Summers* to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant ensures that the scope of the detention incident to a search is confined to its underlying justification.  Once an occupant is beyond the immediate vicinity of the premises to be searched, the search-related law enforcement interests are diminished and the intrusiveness of the detention is more severe.

*Bailey*, __ U.S. at __, 133 S. Ct. at 1042.   However, this spatial limitation deals with the underlying policy concerns of executing a warrant.  Therefore, in dealing with what constitutes physical presence for an objecting co-tenant, we must examine the underlying justifications for the rule in *Randolph*.   As noted above, *Randolph* is based on the widely-shared social expectations or customary social usage that exists when a visitor is confronted with a present and objecting resident.

> Explaining why consent by one occupant could not override an objection by a physically present occupant, the *Randolph* Court stated:
> > [I]t is fair to say that a caller standing at the door of shared premises would have no confidence that one occupant's invitation was a sufficiently good reason to enter when a fellow tenant stood there saying, "stay out."

---

[4]     "The rule in *Summers* extends farther than some earlier exceptions because it does not require law enforcement to have particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers."  *Bailey v. United States*, __ U.S. __, __, 133 S. Ct. 1031, 1037-38 (2013) (citing *Muehler v. Mena*, 544 U.S. 93 (2005)).

[5]     "[M]inimizing the risk of harm to the officers," that "the orderly completion of the search may be facilitated," and "the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found."  *Bailey*, __ U.S. at __, 133 S. Ct. at 1038-40 (quoting *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981)).

8

> Without some very good reason, no sensible person would go inside under those conditions.
>
> It seems obvious that the calculus of this hypothetical caller would likely be quite different if the objecting tenant was not standing at the door. When the objecting occupant is standing at the threshold saying "stay out," a friend or visitor invited to enter by another occupant can expect at best an uncomfortable scene and at worst violence if he or she tries to brush past the objector. But when the objector is not on the scene (*and especially when it is known that the objector will not return during the course of the visit*), the friend or visitor is much more likely to accept the invitation to enter.

*Fernandez*, __ U.S. at __, 134 S. Ct. at 1135 (emphasis added) (footnote and citation omitted). Based on Tena's location off the premises and the circumstances of his removal, it is clear that officers obtained consent when Tena was no longer present.[6]

When officers removed Tena from the house, he yelled back to keep the officers out of the house. The officers then secured him in the patrol car parked off the premises. Not only was Tena not at the front door, but he was no longer on the premises at all. There was also no chance that Tena would return while officers spoke with his mother. The officers handcuffed and placed Tena in the rear of the patrol car with the express purpose to transport him to jail. Any social pressure that may have existed from Tena's objection had been removed because Tena was no longer in a place to express his objection and he was on his way to jail. The officers also acted objectively reasonably by removing Tena from the premises. The officers acted under the authority of two arrest warrants. Once they lawfully removed Tena from the premises, the officers were free to talk with and rely on his mother's consent to search her house.[7]

---

[6] Though this is not a close case, the United States Supreme Court provided guidance in such cases under the *Summers* context:

> In closer cases courts can consider a number of factors to determine whether an occupant was detained within the immediate vicinity of the premises to be searched, including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors.

*Bailey*, __ U.S. at __, 133 S. Ct. at 1042.

[7] The Court concluded *Fernandez* by discussing the rights of the non-objecting tenant:

> Putting the exception the Court adopted in *Randolph* to one side, the lawful occupant of a house or apartment should have the right to invite the police to enter the dwelling and conduct a search. Any other rule would trample on the rights of the occupant who is willing to consent. Such an occupant may want the police to

9

## III.

## CONCLUSION

Officers acted under the lawful consent of Tena's mother when searching his room. Therefore, the district court's order denying Tena's motion to suppress is affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**

---

search in order to dispel "suspicion raised by sharing quarters with a criminal." [*Randolph*, 547 U.S. at 116; see also *Schneckloth v. Bustamonte*, 412 U.S. 218, 243 (1973)] (evidence obtained pursuant to a consent search "may insure that a wholly innocent person is not wrongly charged with a criminal offense"). And an occupant may want the police to conduct a thorough search so that any dangerous contraband can be found and removed. In this case, for example, the search resulted in the discovery and removal of a sawed-off shotgun to which [the woman's] 4-year-old son had access.

Denying someone in [the woman's] position the right to allow the police to enter *her* home would also show disrespect for her independence. Having beaten [the woman], petitioner would bar her from controlling access to her own home until such time as he chose to relent. The Fourth Amendment does not give him that power.

*Fernandez v. California*, __ U.S. __, __, 134 S. Ct. 1126, 1137 (2014).