# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42169

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 31 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: May 28, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DONA NICHOEAL WESTLAKE, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Charles W. Hosack, District Judge.

Order of the district court granting suppression motion, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Theodore S. Tollefson, Deputy Attorney General, Boise, for appellant. Theodore S. Tollefson argued.

Sara B. Thomas, State Appellate Public Defender; Kimberly E. Smith, Deputy Appellate Public Defender, Boise, for respondent. Kimberly E. Smith argued.

---

LANSING, Judge

The State appeals from the district court's order granting defendant Dona Nichoeal Westlake's motion to suppress evidence found in her backpack which was in a motel room that police searched based on consent from a third party. The State contends that the court erred in concluding that under the totality of the circumstances, a third party lacked apparent authority to consent to a police search of the backpack. We affirm.

## I.

## BACKGROUND

The Post Falls Police Department received a tip that a wanted individual, Raymundo Chavez, was in a room at a Coeur d'Alene motel. With a warrant for Chavez's arrest, three detectives and two FBI agents went to the motel. The officers initially watched the room from

1

their vehicle for thirty minutes, during which time the only activity observed was a woman, later identified as Katherine Gallagher, entering the room. When the officers knocked, Gallagher opened the door, and the officers observed defendant Dona Westlake and a man (not Chavez) standing or sitting near the bed in the main room just inside the door. A detective asked Gallagher if it was her motel room and she said yes. He then asked whether Chavez was there and Gallagher said he was "in the back," referring to a separate bedroom in the motel suite. Upon a detective's request for permission to enter the suite, Gallagher consented. For officer safety purposes, an officer removed Gallagher, Westlake, and the man from the front room and placed them on a bench just outside of the motel room door. The remaining officers then went to the second bedroom, where they found Chavez sleeping. He was arrested, handcuffed, and placed in a patrol vehicle.

While in the motel suite, the officers saw drug paraphernalia. A detective then called Gallagher back into the front room while Westlake and the second man remained outside. A detective asked Gallagher for permission to search the premises, and she consented. Gallagher remained in the room during the search. In the course of the search, a detective found methamphetamine inside a pink backpack that was on the bed near where Westlake had been standing or sitting when police arrived. After finding the drug, the detective asked Gallagher whether the backpack was hers, and she said that it belonged to Westlake. The detective then questioned Westlake for the first time. She admitted that she owned the backpack and, when confronted with the drugs, stated that "it looks like meth." Westlake declined to say anything more. She was arrested and charged with possession of methamphetamine, Idaho Code § 37-2732(c)(1).

Westlake moved to suppress the methamphetamine and her statements to police on the ground that the warrantless search of her backpack was unlawful. In response, the State argued that the warrantless search of her backpack was justified by Gallagher's consent to a search of the motel suite. It was uncontroverted that Gallagher had no actual authority to consent to a search of Westlake's backpack, but the State asserted that Gallagher had apparent authority to consent to the search because the officers reasonably believed that the backpack belonged to her.

The district court concluded, however, that the State had not demonstrated apparent authority. The court pointed out that the State presented no evidence indicating to the officers that the backpack belonged to Gallagher personally as opposed to anyone else in the room. The

2

court found that the color of the pink backpack indicated that it likely belonged to a female and that because the backpack was located near defendant Westlake when the officers initially entered the motel room, "the most reasonable inference was that the backpack belonged to Westlake." The court granted the suppression motion, holding that the officers should have inquired about ownership of the backpack before proceeding with the search. The State appeals from the district court's suppression order.

## II.

## ANALYSIS

In reviewing an order granting or denying a motion to suppress evidence, we defer to the trial court's factual findings unless they are clearly erroneous, but we freely review the determination as to whether constitutional requirements have been satisfied in light of the facts found. *State v. Hansen*, 151 Idaho 342, 345, 256 P.3d 750, 753 (2011); *State v. Smith*, 144 Idaho 482, 485, 163 P.3d 1194, 1197 (2007).

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment, *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995), but consent voluntarily given by someone with authority is an exception to the warrant requirement. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006); *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003). The burden is on the State to show that constitutionally sufficient consent was given. *Rodriguez*, 497 U.S. at 181 (holding the State has the burden to show "authority"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (generally holding that the State bears the burden of showing that a consent is constitutionally valid); *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986) (same). To meet this burden, the State must prove that the consenting person had either actual authority or apparent authority over the place to be searched. *Rodriguez*, 497 U.S. at 181; *State v. McCaughey*, 127 Idaho 669, 674, 904 P.2d 939, 944 (1995).

The State is not limited to proof that consent was given by the actual owner of the item or premises. If a person consenting to a search does not have actual authority, but government agents reasonably believe that the person has authority, a warrantless search may still be valid.

3

*Rodriguez*, 497 U.S. at 186; *State v. Brauch*, 133 Idaho 215, 219, 984 P.2d 703, 707 (1999); *State v. Fancher*, 145 Idaho 832, 838-39, 186 P.3d 688, 694-95 (Ct. App. 2008). This "apparent authority" doctrine was developed by the United States Supreme Court in *Rodriguez*. In that case, the defendant's girlfriend called police from her mother's home to report a beating she had suffered at the hands of the defendant in their apartment. When the officers arrived, the girlfriend referred to the residence as "our" apartment and stated that she had clothes and furniture there. The officers accompanied the girlfriend to the apartment, where she opened the door with a key and then gave them permission to enter. After observing drugs and paraphernalia inside, the officers arrested Rodriguez. Evidence presented at a hearing on *Rodriguez's* suppression motion revealed that the girlfriend had no actual authority to consent to the officers' entry because she had moved out of the apartment a month earlier and had taken the key without Rodriguez's knowledge. *Rodriguez*, 497 U.S. at 179-82. The Supreme Court framed the issue presented as: "Whether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." *Id.* at 179. The Court answered this query in the affirmative. "It is apparent," the Court said, "that in order to satisfy the reasonableness requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government--whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement--is not that they always be correct, but that they always be reasonable." *Id.* at 185. Whether the basis for such apparent authority exists, the Court said, "is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably." *Id.* at 186. The Court cautioned, however, that authority to consent to a search cannot just be assumed:

> [W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? *Terry v. Ohio*, 392 U.S. 1,

4

21-22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Id.* at 188-89.

Thus, a determination of apparent authority is fact-driven, requiring consideration of the totality of the circumstances in each case. *Brauch*, 133 Idaho at 220, 984 P.2d at 708. "Every encounter has its own facts and its own dynamics. So does every consent." *State v. Benson*, 133 Idaho 152, 156, 983 P.2d 225, 229 (Ct. App. 1999) (quoting *United States v. Morning*, 64 F.3d 531, 533 (9th Cir. 1995). Apparent authority must be determined on the facts and circumstances known to the police at the time of the search; what they learned later or what is proved after the fact is irrelevant. *McCaughey*, 127 Idaho at 674, 904 P.2d at 944; *State v. Tena*, 156 Idaho 423, 426, 327 P.3d 399, 402 (Ct. App. 2014); *State v. Robinson*, 152 Idaho 961, 966, 277 P.3d 408, 413 (Ct. App. 2012); *State v. Buhler*, 137 Idaho 685, 687-88, 52 P.3d 329, 331-32 (Ct. App. 2002). *Rodriguez* neither imposes a duty of exhaustive inquiry by police before apparent authority will be found to exist, nor credits willful ignorance; it requires that the officer's belief in the consenter's authority over the place or object be objectively reasonable. *Rodriguez*, 497 U.S. at 187-88. Police may not accept a consenter's invitation to search if the circumstances are such that a reasonable person would doubt the consenter's authority absent further inquiry. *Id.* at 188; *McCaughey*, 127 Idaho at 672, 674, 904 P.2d at 942, 944. If the officers lack an objectively reasonable basis to believe authority exists, a search is impermissible unless further inquiry clarifies the authority. *Tena*, 156 Idaho at 426-27, 327 P.3d at 402-03; *Fancher*, 145 Idaho at 839, 186 P.3d at 695.

The State urges that we adopt the standard applied by the Seventh Circuit Court of Appeals in *United States v. Melgar*, 227 F.3d 1038 (7th Cir. 2000) to determine whether a person with authority to allow a search of premises also possesses apparent authority over a container located in that space. In *Melgar*, the court framed the issue as:

> In a sense, the real question for closed container searches is which way the risk of uncertainty should run. Is such a search permissible only if the police have positive knowledge that the closed container is also under the authority of the person who originally consented to the search (Melgar's view), or is it permissible if the police do *not* have reliable information that the container is *not* under the authorizer's control. We are not aware of any case that has taken the strict view represented by the first of these possibilities.

5

*Melgar*, 227 F.3d at 1041. In opting for the second approach, the court said: "A contrary rule would impose an impossible burden on the police. It would mean that they could *never* search closed containers within a dwelling (including hotel rooms) without asking the person whose consent is being given *ex ante* about every item they might encounter." *Melgar*, 227 F.3d at 1042. The *Melgar* approach was followed in *United States v. Snype*, 441 F.3d 119 (2d Cir. 2006), where the Second Circuit held that the lessor and resident of the apartment at issue had the access and authority necessary to consent to a search of the entire premises and that "her open-ended consent would permit the search and seizure of any items found in the apartment with the exception of those 'obviously' belonging to another person." *Id.* at 136.

In our opinion, the *Melgar* approach is based on a false premise--that apparent authority must be either never present or always present whenever the evidence as to actual authority is not explicit. That premise is inconsistent with the Supreme Court's directives in *Rodriguez*, requiring that the facts known to officers support a reasonable belief that the consenter possesses authority, as well as the Idaho authorities referenced above. *Melgar* and *Snype*, allowing the search of containers unless they obviously belong to another person, create a bright-line rule where *Rodriguez* calls for a case-by-case approach that takes into consideration the totality of the circumstances to determine a consenter's apparent authority over the place to be searched. *Rodriguez* directs that if the surrounding circumstances are such that a reasonable person would doubt the consenter's authority, a search may not proceed absent further inquiry that establishes that authority. *Rodriguez*, 497 U.S. at 187-88. *Rodriguez* thus eschews the bright-line rule preferred by the Second and Seventh Circuits.

In harmony with *Rodriguez*, the Idaho Supreme Court has applied a reasonable belief standard, not a bright-line rule. In *State v. Barker*, 136 Idaho 728, 40 P.3d 86 (2002), our Supreme Court considered whether a parolee who had consented to a search of his residence had apparent authority to consent to the search of a fanny pack found in the bedroom. The Court said:

> Because both Tate [the consenter] and Barker [the owner of the container] occupied the master bedroom, Tate had common authority over the bedroom sufficient for him to consent to a search of that room. His consent to search could not extend to items in the bedroom over which he had no common authority, however. When searching that room pursuant to Tate's consent, the officers could search any item in the bedroom if they had reasonable suspicion that Tate owned, possessed, or controlled the item. *United States v. Davis*, 932 F.2d 752

6

(9th Cir.1991). The circumstances need not indicate that the item was obviously and undeniably owned, possessed, or controlled by Tate. *Id.* When searching a residence pursuant to the consent of only one of the occupants, the officers are not required *in all instances* to inquire into the ownership, possession, or control of an item when ownership, possession, or control is not obviously and undeniably apparent. *Id.* If the officers do inquire, they are not necessarily bound by the answer given. *Id. The test is whether, under the totality of the circumstances, the officers had a reasonable suspicion that the item was owned, possessed, or controlled by the occupant who consented to the search.*

*Barker*, 136 Idaho at 731-32, 40 P.3d at 89-90 (emphasis added). Most federal courts also hold, contrary to *Melgar* and *Snype*, that an officer must make further inquiries before conducting a search if he or she is faced with ambiguous or unclear facts related to the consenting party's authority. *United States v. Purcell*, 526 F.3d 953, 963-65 (6th Cir. 2008); *United States v. Cos*, 498 F.3d 1115, 1128-31 (10th Cir. 2007); *United States v. Waller*, 426 F.3d 838, 846-48 (6th Cir. 2005); *United States v. Kimoana*, 383 F.3d 1215, 1222 (10th Cir. 2004); *United States v. Reid*, 226 F.3d 1020, 1025-26 (9th Cir. 2000); *United States v. Rosario*, 962 F.2d 733, 738 (7th Cir. 1992); *United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C. Cir. 1991); *United States v. Corral*, 339 F. Supp. 2d 781, 794 (W.D. Tex. 2004); *Kaspar v. City of Hobbs*, 90 F. Supp. 2d 1313, 1319 (D.N.M. 2000).

Here, the detectives' belief that Gallagher had authority to permit a search of the motel suite was undoubtedly reasonable because she is the person who answered their knock and, when asked, she said it was her room. The circumstances gave the officers no reason to doubt Gallagher's responses. The issue presented, however, is not Gallagher's apparent authority to consent to a search of the motel suite but her apparent authority to consent to a search of one particular container in the suite. Like homes, personal effects are expressly protected from unreasonable search and seizure by the Fourth Amendment, and an individual's expectation of privacy in an effect is not automatically forfeited whenever that item is temporarily located within an area over which a third party has authority. In *Barker*, 136 Idaho at 731, 40 P.3d at 89, for example, the Idaho Supreme Court observed that although two people occupied the master bedroom of an apartment, indicating the man had common authority over the bedroom sufficient for him to consent to a search of that room, "[h]is consent to search could not extend to items in the bedroom over which he had no common authority." *See also United States v. Munoz*, 590 F.3d 916, 922-23 (8th Cir. 2010) (passenger who rented car could consent to search of car but not to backpack in car that was not reasonably believed to belong to that passenger rather than

7

another occupant); *United States v. Salinas-Cano*, 959 F.2d 861, 864-65 (10th Cir. 1992) (host could not consent to search of guest's suitcase, as it was "a type of container long associated with privacy expectations, unlike a cardboard box, a cassette tape, or a plastic bucket"); *United States v. Wilson*, 536 F.2d 883, 884-85 (9th Cir. 1976) (woman in whose home bank robbers had spent the night before the robbery, and presumably planned to return, had no actual or apparent authority to consent to a search of their suitcases); *State v. Edwards*, 570 A.2d 193, 202-03 (Conn. 1990) (host cannot consent to search of guest's luggage, and although "there might have been a clearer expectation of privacy in a backpack that was locked . . . such a security measure is not essential" where there was no evidence that the defendant ever authorized the host to inspect the contents of his backpack); *People v. Gonzalez*, 667 N.E.2d 323, 325 (N.Y. 1996) (host could not consent to search of guest's duffel bag guest kept under mattress of his bed, as courts have "rejected the sufficiency of a host's general consent to search premises to validate the search of a guest's overnight bag, purse, dresser drawers used exclusively for the guest's personal effects, or similar objects").

When determining whether the person with apparent authority to consent to a search of an area also has apparent authority over a specific container in that area, the nature of the container is significant. In most cases, an officer would hardly be expected to pause before searching a trash bin or a kitchen canister in a home where a resident has granted permission to search, for these containers are not places where one individual's personal and private effects are usually kept to the exclusion of others. But, as stressed in *United States v. Block*, 590 F.2d 535, 541 (4th Cir. 1978), certain containers such as "valises, suitcases, footlockers, strong boxes, etc. . . . are frequently the objects of [one's] highest privacy expectations," and these "expectations may well be at their most intense when such effects are deposited temporarily . . . in places under the general control of another." Other examples of these types of private containers (backpacks, purses, luggage, duffel bags, wallets) are addressed in the cases cited above. Here, the district court correctly reasoned that the nature of the searched item, a backpack, was significant because it is a type of container commonly used as a private repository for personal items.

The State argues that the district court's suppression order was inconsistent with its "factual findings that a detective 'reasonably believed that Gallagher had the authority to consent to a search of items in the room.'" This argument misapprehends the district court's meaning

8

and mischaracterizes the "reasonableness" determination as one of fact rather than a legal conclusion. Instead of issuing written findings and conclusions, the district court announced its decision orally from the bench and did say, at various points, that certain conduct of the officers was reasonable. Although parts of the oral ruling lacked precision, the court ultimately held that the circumstances here did not support a reasonable belief that Gallagher had apparent authority over the backpack, and therefore the officers had a duty of reasonable inquiry about the item's ownership before proceeding with the search. In context, some of the court's statements upon which the State relies related to the officers' assumptions regarding the *scope* of Gallagher's consent, not her apparent authority.[1] That is, the district court commented that it was reasonable for the officers to believe Gallagher's consent to search the motel room encompassed containers in the room that actually belonged to her. At other points, the court's comments that some of the officers' conduct was reasonable appear to be an observation that their actions were understandable from a human standpoint though not reasonable under the applicable legal standards.

---

[1] The individual's authority over the area to be searched differs from the question of the scope of a person's consent to a search. The scope of a consent was addressed in *Florida v. Jimeno*, 500 U.S. 248 (1991) where the defendant, alone in his car, consented to a search of the vehicle. The officer found cocaine in a closed paper bag on the floorboard. The Supreme Court rejected an argument that "if the police wish to search closed containers within a car they must separately request permission to search each container," holding that the scope of consent is determined by an objective reasonableness standard. *Id.* at 251-52. Because the defendant granted the officer permission to search his car without any explicit limitation on the scope of the search, the Court held that "it was objectively reasonable for the police to conclude that the general consent to search [the defendant's] car included consent to search containers within that car." *Id.* at 251. The Supreme Court said: "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.* at 252. In the present case, because Gallagher placed no limits on the search of the motel suite, it was reasonable for the officers here to conclude that the scope of her consent included searches of containers that belonged to her. However, the *scope* of consent and a consenting party's *authority* to permit a search of a place or container are separate inquiries. *See State v. Barker*, 136 Idaho 728, 731, 40 P.3d 86, 89 (2002) (discussing both); *State v. Frizzel*, 132 Idaho 522, 524, 975 P.2d 1187, 1189 (Ct. App. 1999) (discussing both). Thus, the district court's determination that the search of items in the motel room belonging to Gallagher were within the scope of her consent is not inconsistent with the court's further determination that Gallagher lacked apparent authority to consent to a search of an item that did not belong to her.

Even if the district court had held that the officers were reasonable in assuming that Gallagher owned the backpack, the State's implicit argument that this Court would be required to defer to that "finding" is incorrect, for it is not a factual finding but a conclusion of law. On the question of apparent authority to consent to a search, the officer's conduct is "judged against an objective standard:  would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *Rodriguez*, 497 U.S. at 188 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).  Thus, the question of reasonableness of a given search or seizure is one of law over which we exercise free review. *United States v. Arvizu*, 534 U.S. 266, 275 (2002) ("[T]he standard for appellate review of reasonable-suspicion determinations should be *de novo* . . . ."); *State v. Allgood*, 98 Idaho 525, 529, 567 P.2d 1276, 1280 (1977) ("Whether a detention is unreasonable, within the meaning of the Constitution is a question of law."); *Robinson*, 152 Idaho at 964, 277 P.3d at 411 ("[T]he reasonableness of a given search or seizure is a question of law over which we exercise independent review.").  *See also Barker*, 136 Idaho at 731-32, 40 P.3d at 89-90 (deciding apparent authority issue as a matter of law on uncontroverted facts).

The State next argues that the Idaho Supreme Court's decision in *Barker* mandates a conclusion that Gallagher had apparent authority to authorize a search of the backpack in this case.  In *Barker*, John Tate was on parole, having been convicted of possession of a controlled substance, and as a condition of parole he waived his Fourth Amendment rights and consented to searches of his residence.  In urinalysis testing related to his parole, Tate tested positive for a controlled substance and he thereafter absconded supervision.  The police discovered that Tate was living at Rexann Barker's apartment and arrested him.  They then searched the apartment pursuant to Tate's consent to searches of his residence, given as a condition of parole.  In the couple's shared bedroom the police found a fanny pack, and a drug dog alerted on it.  The police asked Barker (Tate no longer being present) to whom the fanny pack belonged, and she said it was hers.  She did not consent to a search of the pack, but the police opened and searched it anyway and found illegal drugs.  Barker was charged with possession of the drugs.  The Idaho Supreme Court held that Tate had apparent authority to consent to a search of the fanny pack, explaining:

> Barker's statement that she owned the fanny pack is not determinative of the issue of whether or not the officer could search the fanny pack.  As stated above, authority to consent to a search is not based upon having a property right

10

in the item to be searched. It is based upon having authority over that item. Even if the officer believed that Barker owned the fanny pack, that fact would not necessarily preclude Tate having joint possession or control of it. Furthermore, the officers had reason to doubt Barker's credibility. When initially contacted by the officers, Barker stated that Tate visited her apartment off and on but he was not living there. Prior to searching the fanny pack, however, the officers were aware of facts indicating that Tate was residing at the apartment. . . .

      We hold that under the totality of the circumstances the officer had reasonable suspicion to believe that Tate had common authority over the fanny pack. Tate was on parole for the charge of possession of a controlled substance. Prior to absconding from supervision, he had submitted a urine sample to his parole officer that tested positive for a controlled substance. His parole officer could certainly reasonably believe that Tate had resumed using controlled substances. The fanny pack was located in the bedroom which was occupied jointly by Tate and Barker. It was sitting on a counter near the adjoining bathroom, where it was readily available. There was nothing about its location or appearance that would indicate that it was owned, possessed, and controlled exclusively by Barker. A drug dog alerted to the fanny pack, and there is no evidence that the officer had any reason to believe that Barker was using controlled substances. Under these facts, the officer could reasonably have suspected that Tate had at least joint possession or control of the fanny pack.

*Barker*, 136 Idaho at 732, 40 P.3d at 90.

We disagree with the State's contention that *Barker* dictates the same result here. In *Barker*, numerous factors supported a reasonable belief that Tate possessed common authority over and access to the contents of the fanny pack. The pack was found in a shared bedroom in a shared residence, and nothing about its location or appearance tended to indicate that the pack was exclusively controlled by Barker. Further, before the search police possessed information tending to link the fanny pack to Tate as he was a known drug user who had recently tested positive for a controlled substance, and based upon the drug dog's alert, the officers were aware that the fanny pack likely contained illegal drugs. Lastly, the officers had reason to doubt the credibility of Barker's claim that the pack belonged to her inasmuch as she had already lied to the officers by denying that Tate lived in the apartment.

No comparable circumstances exist here. The district court correctly held that the facts known to the officers did not support an objectively reasonable belief that the backpack was owned, possessed, or controlled by Gallagher. When the police arrived, there were three other persons in the motel suite, any of whom could have been the owner of the backpack. Because of its color, it was reasonable to infer that the backpack belonged to one of the two women, but

11

nothing in the circumstances suggested that Gallagher, rather than Westlake, was the owner or that the two women possessed common authority over it. To the contrary, there were circumstances suggesting that the backpack belonged to Westlake because it was close to Westlake when the officers arrived. Before seeking entry to the motel suite, the officers had seen Gallagher arrive at the motel, and she was not then carrying the backpack. The district court correctly determined that, in these circumstances, the officers should have inquired as to ownership of the backpack before searching it because they had no reasonable basis to conclude that Gallagher had authority over that item.

The State also asserts that the officers' reliance on Gallagher's consent was valid under this Court's decision in *State v. Frizzel*, 132 Idaho 522, 975 P.2d 1187 (Ct. App. 1999). In that case, a police officer stopped a vehicle and, while the driver and passenger, Frizzel, were seated in the vehicle, asked for permission to search for weapons or any drugs. The driver consented to a search for these items. The officer opened a backpack that was behind the passenger seat, and inside found marijuana and $1,600 cash. On subsequent questioning, Frizzel admitted the pack was his. This Court held that although only Frizzel had *actual* authority to consent to the search of the pack, the officer's reliance on the driver's *apparent* authority to consent was, in the totality of the circumstances, objectively reasonable. We said:

> In the instant case, the pack was not within Frizzel's possession, but behind the passenger seat. Thus, there was no indication that the pack belonged to Frizzel, nor did Frizzel attempt to exercise any control over it. Moreover, Frizzel sat silently by while Smith gave general consent to search the truck for any weapons and any drugs, and said nothing as the officer's search moved from the driver's side of the pickup to the passenger's side, where the pack was located.

*Frizzel*, 132 Idaho at 525, 975 P.2d at 1190 (Ct. App. 1999). Significant to our conclusion was Frizzel's silence while a third party with apparent authority gave consent to search a container that belonged to Frizzel.

Here, the State argues on appeal that Westlake's circumstance is analogous to that of *Frizzel*. The State contends that Westlake was just outside the motel room within hearing distance and remained mute when Gallagher consented to the search. Therefore, the State asserts, her failure to object to the search of her backpack supports a finding that Gallagher had apparent authority. The State's argument is, however, without support in the evidence. At the close of the suppression hearing the prosecutor conceded that he had not proved that Westlake

12

could overhear Gallagher's grant of consent. This concession was well-founded and, accordingly, the State's appellate argument is not.

Lastly, the State argues that because Gallagher's purse was also located on the bed where the backpack was found, it is reasonable to believe that Gallagher owned both items. We do not find this true as a matter of logic. Purses and backpacks are often used in a similar manner, as a private repository to carry personal items, so it might be as logically inferred that if the purse served that purpose for Gallagher, then the backpack probably belonged to the only other woman in the room. In any event, Gallagher's ownership of the purse is not relevant because the evidence did not establish whether she claimed the purse before or after the backpack was searched.

The district court correctly concluded that the facts known to the officers did not warrant a reasonable belief that Gallagher had authority to consent to the search of the backpack. Therefore, the district court did not err in suppressing the evidence produced by the search.

The district court's order granting defendant Westlake's suppression motion is affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR.**